## FINAL ARTICLE

Dealer    WOODFIELD NISSAN, INC. _____, is

a(an) (SELECT ONE) [ ] individual    [ ] partnership    [X] corporation,

incorporated or formed under the laws of the State of _____ ILLINOIS _____ doing business

as _____ N/A _____

("Dealer"). Dealer is located in _____ HOFFMAN ESTATES _____, ___ IL ___
                                                  City             State

The Principal Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| WILLIAM A. SLEVIN | 5 N. 210 HERITAGE COURT WAYNE, IL 60184 | 51% |

The Other Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| HAROLD A. RESKIN | 425 VOLTZ ROAD NORTHBROOK, IL 60062 | 49% |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| WILLIAM A. SLEVIN | 5 N. 210 HERITAGE COURT WAYNE, IL 60184 | 51% |

IN WITNESS THEREOF, the parties hereto have executed this Agreement in triplicate as of _____ October 19 _____, 19 93 at Carson, California.

**DEALER:**

By _____       WOODFIELD NISSAN, INC.

Title _____ PRESIDENT _____

                        **SELLER:**
                        NISSAN DIVISION
                        NISSAN MOTOR CORPORATION IN U.S.A.

                        By _____
                                VICE PRESIDENT
                        Title ___ GENERAL MANAGER, NISSAN DIVISION ___

                        By _____
                        Title ___ REGIONAL GENERAL MANAGER ___

Form #NDA-4P/9-88

---



# NISSAN
# DEALER SALES & SERVICE AGREEMENT

THIS AGREEMENT is entered into effective the day last set forth below by and between the Nissan Division of NISSAN MOTOR CORPORATION IN U.S.A., a California corporation, hereinafter called Seller, and the natural person or entity identified as "Dealer" in the Final Article of this Agreement.

### INTRODUCTION

The purpose of this Agreement is to establish Dealer as an authorized dealer of Nissan Products and to provide for the sale and servicing of Nissan Products in a manner that will best serve the interests of Seller, Dealer, other Authorized Nissan Dealers and owners and purchasers of Nissan Products. This Agreement sets forth: the rights which Dealer will enjoy as an Authorized Nissan Dealer; the responsibilities which Dealer assumes in consideration of its receipt of these rights; and the respective conditions, rights and obligations of Seller and Dealer that apply to Seller's grant to Dealer's assumption of such responsibilities.

This is a personal services Agreement. In entering into this Agreement and appointing Dealer as provided below, Seller is relying upon the personal qualifications, expertise, reputation, integrity, experience, ability and representations of the individual(s) named herein as Principal Owner(s) and Executive Manager.

Achievement of the purposes of this Agreement is premised upon mutual understanding and cooperation between Seller and Dealer. Dealer has entered into this Agreement in reliance upon Seller's integrity and expressed intention to deal fairly with Dealer and the consuming public. Seller has entered into this Agreement in reliance upon Dealer's integrity and ability and expressed intention to deal fairly with Seller and the consuming public.

It is the responsibility of Seller to market Nissan Products throughout the Territory. It is the responsibility of Dealer to actively promote the retail sale of Nissan Products and to provide courteous and efficient service of Nissan Products. The success of Seller and Dealer will depend on how well they each fulfill their respective responsibilities under this Agreement. It is recognized that: Nissan Motor Co., Ltd. (hereinafter called "Manufacturer") will endeavor to provide motor vehicles that offer outstanding value to the consuming public; Seller will endeavor to establish a national network of Authorized Nissan Dealers that can provide effective sales and service effort at the retail level; and Dealer will endeavor to fulfill its responsibilities through aggressive, sound, ethical selling practices and through conscientious regard for customer service.

Seller and Dealer shall refrain from engaging in conduct or activities which might be detrimental to or reflect adversely upon the reputation of Seller, Manufacturer, Dealer or Nissan Products and shall engage in no discourteous, deceptive, misleading or unethical practices or activities.

For consistency and clarity, terms which are used frequently in this Agreement have been defined in Section 1 of the Standard Provisions. All terms used herein which are defined in the Standard Provisions shall have the meaning stated in said Standard Provisions. These definitions should be read carefully for a proper understanding of the provisions in which they appear.

To achieve the purposes referred to above, Seller and Dealer agree as follows:

**ARTICLE FIRST:** Appointment of Dealer

Subject to the conditions and provisions of this Agreement, Seller:

(a) appoints Dealer as an Authorized Nissan Dealer and grants Dealer the non-exclusive right to buy from Seller those Nissan Products specified in Dealer's current Product Addendum hereto, for resale, rental or lease at or from the Dealership Locations established and described in accordance with Section 2 of the Standard Provisions; and

(b) grants Dealer a non-exclusive right, subject to and in accordance with Section 6.K of the Standard Provisions, to identify itself as an Authorized Nissan Dealer, to display the Nissan Marks in the conduct of its Dealership Operations and to use the Nissan Marks in the advertising, promotion and sale of Nissan Products in the manner provided in this Agreement.

**ARTICLE SECOND:** Assumption of Responsibilities by Dealer

Dealer hereby accepts from Seller its appointment as an Authorized Nissan Dealer and, in consideration of its appointment and subject to the other conditions and provisions of this Agreement, hereby assumes the responsibility for:

(a) establishing and maintaining at the Dealership Locations the Dealership Facilities in accordance with Section 2 of the Standard Provisions;

(b) actively and effectively promoting the sale at retail (and, if Dealer elects, the leasing and rental) of Nissan Vehicles within Dealer's Primary Market Area in accordance with Section 3 of the Standard Provisions;

(c) servicing Nissan Vehicles and for selling and servicing Genuine Nissan Parts and Accessories in accordance with Section 5 of the Standard Provisions;

(d) building and maintaining consumer confidence in Dealer and in Nissan Products in accordance with Section 5 of the Standard Provisions; and

(e) performance of the additional responsibilities set forth in this Agreement, including those specified in Section 6 of the Standard Provisions.

**ARTICLE THIRD:** Ownership

(a) Owners. This Agreement has been entered into by Seller in reliance upon, and in consideration of, the personal qualifications, experience, reputation, integrity, experience, ability and representations with respect thereto of the Principal Owner(s) named in the Final Article of this Agreement and in reliance upon Dealer's representations concerning the ownership of Dealer as follows:

(i) Dealer represents and agrees that the person(s) named as Principal Owner(s) in the Final Article of this Agreement, and only those person(s), shall be the Principal Owner(s) of Dealer;

(ii) Dealer represents and agrees that the person(s) named as Other Owner(s) in the Final Article of this Agreement, and only those person(s), shall be the Other Owner(s) of Dealer.

(b) Holding Company. Seller requires that a natural person be named as the Principal Owner(s) of Dealer because Seller relies on the personal qualifications, expertise, reputation, integrity, experience, ability and representations of such individuals. If one or more of the owner(s) of Dealer is a corporation, partnership or other entity and not a natural person (hereinafter called "Holding Company"), Dealer and Seller agree that the natural persons listed in the Holding Company Addendum of this Agreement as owners of the Holding Company shall be deemed to be the Principal Owner(s) and Other Owner(s) of Dealer, as the case may be and that the terms and conditions of this Agreement, including without limitation the provisions of this Article Third and Sections 12, 14 and 15 of the Standard Provisions, shall apply to the owner(s) of the Holding Company as well as to Dealer. Dealer represents to Seller and agrees that the Holding Company is owned as indicated in the Holding Company Addendum to this Agreement.

(c) Changes in Ownership. In view of the fact that this is a personal services agreement and in view of its objectives and purposes, this Agreement and the rights and privileges conferred on Dealer hereunder are not assignable, transferable or salable by Dealer, and no property right or interest is or shall be deemed to be sold, conveyed or transferred to Dealer under this Agreement. Dealer agrees that any change in the ownership of Dealer specified herein requires the prior written consent of Seller, excepting only changes in the record or beneficial ownership interests of Other Owner(s) not effecting a change in majority control or interest. Dealer shall give Seller prior notice of any proposed change in said ownership requiring the consent of Seller and immediate notice of the death or incapacity of any Principal Owner. No such change, and no assignment of this Agreement or of any right or interest herein, shall be effective against Seller unless and until embodied in an appropriate amendment to or assignment of this Agreement, as the case may be, duly executed and delivered by Seller and by Dealer. Seller shall not, however, unreasonably withhold its consent to any such change. Seller shall have no obligation to transact business with any person who is not named either as a Principal Owner or Executive Manager of Dealer hereunder or otherwise to give effect to any proposed sale or transfer of the ownership or management of Dealer prior to having concluded the evaluation of such a proposal as provided in Section 15 of the Standard Provisions.

**ARTICLE FOURTH:** Management

(a) Executive Manager. Seller and Dealer agree that the retention by Dealer of qualified management is of critical importance to the successful operation of Dealer and to the achievement of the purposes and objectives of this Agreement. This Agreement has been entered into by Seller in reliance upon, and in consideration of, the personal qualifications, expertise, reputation, integrity, experience, ability and representations with respect thereto of the person named as Executive Manager in the Final Article of this Agreement and on Dealer's representation to Seller and agreement that the person identified as Executive Manager shall be Dealer's executive manager, shall have full managerial authority for the Dealership Operations, and shall continually provide his or her personal services in operating the dealership and will be physically present at the Dealership Facilities.

(b) Changes in Management. In view of the fact that this is a personal services Agreement and in view of its objectives and purposes, Dealer agrees that any change in the Executive Manager from that specified in the Final Article of this Agreement requires the prior written consent of Seller. Dealer shall give Seller prior notice of any proposed change in Executive Manager and immediate notice of the death or incapacity of any Executive Manager. No change in Executive Manager shall be effective unless and until embodied in an appropriate amendment to this Agreement duly executed and delivered by Seller and by Dealer. Subject to the foregoing, Dealer shall make its own, independent decisions concerning the hiring and firing of its employees including without limitation, its Executive Manager.

To enable Seller to evaluate and respond to Dealer concerning any proposed change in Executive Manager, Dealer agrees to provide, in the form requested by Seller and in a timely manner, all applications and information customarily requested by Seller to evaluate the proposed change. While Seller shall not unreasonably withhold its consent to any such change, it is agreed that any successor Executive Manager must possess personal qualifications, expertise, reputation, integrity, experience and ability which are, in the opinion of Seller, satisfactory. Seller will determine whether, in its opinion, the proposed change is likely to result in a successful dealership operation with capable management that will satisfactorily perform Dealer's obligations under this Agreement. Seller shall have no obligation to transact business with any person who is not named as an Executive Manager of Dealer hereunder prior to having concluded its evaluation of such person.

(c) Evaluation of Management. Dealer and Seller understand and acknowledge that the personal qualifications, expertise, reputation, ability, integrity, experience and ability of the Executive Manager and his or her ability to effectively manage Dealer's day-to-day Dealership Operations is critical to the success of Dealer in performing its obligations under this Agreement. Seller may from time to time develop standards and/or procedures for evaluating the performance of the Executive Manager and of Dealer's personnel generally. Seller may, from time to time, evaluate the performance of the Executive Manager and will advise Dealer and the Executive Manager of the results of such evaluations, and Dealer shall promptly take such action as may be required to correct any deficiencies in the Executive Manager's performance to the reasonable satisfaction of Seller.

**ARTICLE FIFTH:** Additional Provisions

The additional provisions set forth in the attached "Nissan Dealer Sales and Service Agreement Standard Provisions," bearing form number NDA-4S/9-88 are hereby incorporated in and made a part of this Agreement. The Notice of Primary Market Area, Dealership Facilities Addendum, Product Addendum, Dealer Identification Addendum, Holding Company Addendum, if applicable, and all Guides referred to in this Agreement (including references contained in the Standard Provisions referred to above) are hereby incorporated in and made a part of this Agreement. Dealer further agrees to be bound by and comply with: the Warranty Manual; Seller's Manuals or Instructions heretofore or hereafter issued by Seller to Dealer; any amendment, revision or supplement to any of the foregoing; and any other manuals heretofore or hereafter issued by Seller to Dealer.

**ARTICLE SIXTH:** Termination of Prior Agreements

This Agreement cancels, supersedes and annuls all prior contracts, agreements and understandings except as stated herein, all negotiations, representations and understandings being merged herein. No waiver, modification or change of any of the terms of this Agreement or change or erasure of any printed part of this Agreement or addition to it (except filling of blank spaces and lines) will be valid or binding on Seller unless approved in writing by the President or an authorized Vice-President of Seller.

**ARTICLE SEVENTH:** Term

This Agreement shall have a term commencing on the effective date hereof and continuing until terminated by either party in accordance with Section 12 of the Standard Provisions.

**ARTICLE EIGHTH:** License of Dealer

If Dealer is required to secure or maintain a license for the conduct of its business as contemplated by this Agreement in any state or jurisdiction where any of its Dealership Operations are to be conducted or any of its Dealership Facilities are located, this Agreement shall not be valid until and unless Dealer shall have furnished Seller with written notice specifying the date and number, if any, of such license or licenses issued to Dealer, Dealer shall notify Seller immediately in writing if Dealer shall fail to secure or maintain any and all such licenses or renewal thereof or, if such license or licenses are suspended or revoked, specifying the effective date of any such suspension or revocation.

**ARTICLE NINTH:** Execution of Agreement

This Agreement, and any Addendum or amendment or notice with respect thereto, shall be valid and binding on Seller only when it bears the signature of either the President or an authorized Vice-President of Seller and, when such signature is a facsimile, the manual countersignature of an authorized employee of Seller and a duplicate original thereof is delivered personally or by mail to the main Dealership Location. This Agreement shall bind Dealer only when it is signed by: a duly authorized officer or executive of Dealer if a corporation; one of the general partners of Dealer if a partnership; or Dealer if an individual.

**ARTICLE TENTH:** Special Conditions

See **Exhibit A** which is incorporated by this reference into this agreement for all purposes.

**AMENDMENT NO. 5**
**TO**
**NISSAN DEALER**
**SALES AND SERVICE AGREEMENT**

This Agreement of Amendment is entered into and effective _____*November 24, 2014*_____ by and between the Nissan Division of NISSAN NORTH AMERICA, INC., a California corporation (hereinafter "Seller"), and WOODFIELD NISSAN, INC., an Illinois corporation (hereinafter "Dealer"). This Amendment is incorporated by reference in and is a part of the Nissan Dealer Sales and Service Agreement between Dealer and Seller dated **October 19, 1993**. The terms of this Amendment will be effective throughout the term hereof, and shall be binding on any successors. As a condition of Seller's consent to any change in ownership, Dealer agrees to require any proposed buyer of Dealer's stock or of Dealer's Nissan dealership assets to assume the contractual rights, obligations and provisions in accordance with Seller's Guides and Policies in effect at that time, specifically including those set forth below.

**RECITALS**

WHEREAS on October 19, 1993, Seller and Dealer entered into a Nissan Dealer Sales and Service Agreement (hereinafter "the Agreement").

WHEREAS on April 29, 1996, Seller and Dealer agreed to amend the Agreement to reflect an ownership change.

WHEREAS on May 15, 2001, Seller and Dealer agreed to amend the Agreement to reflect changes to Article Tenth.

WHEREAS on September 30, 2004, Seller and Dealer agreed to amend the Agreement to reflect an executive manager change and changes to Article Tenth.

WHEREAS on April 28, 2011, Seller and Dealer agreed to amend the Agreement to reflect an executive manager change.

WHEREAS Seller and Dealer desire to amend the Agreement to reflect an executive manager change.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1. The identification of Executive Manager in the Final Article is hereby amended to read as follows:

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| Keith E. Narozny | 1636 N. Oakley<br>Chicago, IL 60637 | 0% |

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement in triplicate as of the day and year first above written.

Amendment No. 5
Dealer: WOODFIELD NISSAN, INC.

**DEALER**

WOODFIELD NISSAN, INC.

By _____
   William A. Slevin
   Principal Owner

**SELLER**

NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By _____
   Leon Dorssers
   Vice President, Dealer Network Development
   Nissan North America

By _____
   Bryan Dumais
   Regional Vice President
   Midwest Region

**AMENDMENT NO. 4**
**TO**
**NISSAN DEALER**
**SALES AND SERVICE AGREEMENT**

This Agreement of Amendment is entered into and effective _____*April 28,*_____ 2011 by and between the Nissan Division of NISSAN NORTH AMERICA, INC., a California corporation (hereinafter "Seller"), and WOODFIELD NISSAN, INC., an Illinois corporation (hereinafter "Dealer"). This Amendment is incorporated by reference in and is a part of the Nissan Dealer Sales and Service Agreement between Dealer and Seller dated **October 19, 1993**. The terms of this Amendment will be effective throughout the term hereof, and shall be binding on any successors. As a condition of Seller's consent to any change in ownership, Dealer agrees to require any proposed buyer of Dealer's stock or of Dealer's Nissan dealership assets to assume the contractual rights, obligations and provisions in accordance with Seller's Guides and Policies in effect at that time, specifically including those set forth below.

**RECITALS**

WHEREAS on October 19, 1993, Seller and Dealer entered into a Nissan Dealer Sales and Service Agreement (hereinafter "the Agreement").

WHEREAS on April 29, 1996, Seller and Dealer agreed to amend the Agreement to reflect an ownership change.

WHEREAS on May 15, 2001, Seller and Dealer agreed to amend the Agreement to reflect changes to Article Tenth.

WHEREAS on September 30, 2004, Seller and Dealer agreed to amend the Agreement to reflect an executive manager change and changes to Article Tenth.

WHEREAS Seller and Dealer desire to amend the Agreement to reflect an executive manager change.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1. The identification of Owner(s) and Executive Manager in the Final Article is hereby amended to read as follows:

The Principal Owner of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| William A. Slevin | 24 Pentwater Drive<br>South Barrington, IL 60010 | 100% |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| William A. Slevin | 24 Pentwater Drive<br>South Barrington, IL 60010 | 100% |

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

Amendment No. 4
Dealer: WOODFIELD NISSAN, INC.


IN WITNESS WHEREOF, the parties have executed this Agreement in triplicate as of the day and year first above written.


**DEALER**

WOODFIELD NISSAN, INC.


By _____

William A. Slevin
Principal Owner


**SELLER**

NISSAN DIVISION
NISSAN NORTH AMERICA, INC.


By _____

Albert Castignetti
Vice President
General Manager, Nissan Division


By _____

Walter H. Burchfield, Jr.
Regional Vice President
Midwest Region

**NISSAN DEALERSHIP FACILITIES ADDENDUM**

**NISSAN NORTH AMERICA, INC.**

| Site Address | FACILITIES & LOCATION SIZE (Square Feet) | | | | | | Land | | | | | | | Total Building & Land | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Showroom | Parts & Service Building | | | | | New Vehicle Dept | | Used Vehicle Dept | | Parking | | | Total Building & Land | | | |
| | Sq. Ft | Parts Sq. Ft | Service Bays | Service Sq. Ft | Service Office Sq. Ft | Total Building Sq. Ft | Spaces | Sq. Ft | Spaces | Sq. Ft | Spaces | Sq. Ft | Total Land Sq. Ft | Total Building & Land Sq. Ft | Reserve land | Unusable Land | Total Acres |
| 700 W. Higgins Road | 10,000 | 4,340 | 26 | 16,420 | | 30,760 | | 164,100 | | 66,500 | | | 230,600 | 261,360 | | | 6.00 |
| 790 W. Higgins Road | | | | | | | | 36,408 | | | | | 36,408 | 36,408 | | | 0.84 |
| 3. Additional Location | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| Actual | 10,000 | 4,340 | 26 | 16,420 | | 30,760 | | 200,508 | | 66,500 | | | 267,008 | 297,768 | | | 6.84 |
| Guide | 8,000 | 7,250 | 29 | 15,225 | 260 | 30,735 | 174 | 52,200 | 131 | 39,300 | 149 | 52,150 | 143,650 | 174,385 | 43,596 | 34,877 | 5.80 |
| Actual % Guide | 125% | 60% | 90% | 108% | | 100% | | 384% | | 169% | | | 186% | 171% | | | 118% |

| Makes Sold | Planning Volume | Units In Operation |
|---|---|---|
| NISSAN | 1,042 | 5,798 |
| | | |
| | | |
| | | |
| | | |
| **TOTALS** | **1,042** | **5,798** |

**FACILITY DESIGNATION**
- [x] Exclusive
- [ ] Dual
- [ ] Dual w/Exclusive Showroom

This Dealership Facilities Addendum is executed by Dealer and Seller pursuant to Section 2.A of the Nissan Dealer Sales and Service Agreement in effect between said parties and is effective as of the date set forth below. Dealer and Seller agree that as of the effective date the information above accurately describes the Dealership Location and Dealership Facilities, the purposes for which each location is used and the current Guides for such facilities based on the Planning Volumes stated herein. The execution of this Facilities Addendum shall not be construed as evidence of Dealer's fulfillment of its responsibilities under Section 2 of the Agreement. Changes in the Dealership Location, the Dealership Facilities or their usage from the locations and specific uses stated herein cannot be made by Dealer without the prior written consent of Seller. Such changes and any changes in Seller's Guides will be reflected in a new Dealership Facilities Addendum when deemed necessary by Seller. This Dealership Facilities Addendum cancels and supersedes any prior Dealership Facilities Addenda executed by Seller and Dealer.

**DEALER:**

Woodfield Nissan, Inc.
Dealer Name

By _____
William A. Slevin
Principal Owner

Accuracy of information verified for Seller
By _____
M. Scott Compton, Market Representation Manager

3/5/2009
Date Verified

THIS ADDENDUM IS EFFECTIVE AS OF

January 26, 2010

Doing Business As

Hoffman Estates
City

IL          60195          3229
State        Zip          Dealer Code

**SELLER**
**NISSAN DIVISION**
**NISSAN NORTH AMERICA, INC.**

By _____
Albert Castignetti
Vice President & General Manager, Nissan Division

By _____
Walter H. Burchfield, Jr.
Regional Vice President

## FOR EACH SITE COMPLETE THE FOLLOWING:

### SITE A

**FACILITIES USE (Check one or more)**

- [x] All Dealership Operations
- [ ] New Vehicle Sales
- [ ] Vehicle Storage
- [ ] Used Vehicle Sales
- [ ] Office & Administration
- [ ] Parts Storage
- [ ] Service

Other _____

**OWNERSHIP (Check one)**

Facilities are owned by:

- [ ] Dealer
- [x] Affiliate of Dealer
- [ ] Owner of Dealer
- [ ] Third Party

**LEASE INFORMATION (Complete, if leased)**

Lease Expiration Date: December 31, 2019

Net Monthly Cost (Taxes, Insurance, etc.): $70,000

Owner Name: Slevin Capital Investments, Inc.

Explain contingencies or options*: Two 5-year options to renew

### SITE B

**FACILITIES USE (Check one or more)**

- [ ] All Dealership Operations
- [ ] New Vehicle Sales
- [x] Vehicle Storage
- [ ] Used Vehicle Sales
- [ ] Office & Administration
- [ ] Parts Storage
- [ ] Service

Other _____

**OWNERSHIP (Check one)**

Facilities are owned by:

- [ ] Dealer
- [x] Affiliate of Dealer
- [ ] Owner of Dealer
- [ ] Third Party

**LEASE INFORMATION (Complete, if leased)**

Lease Expiration Date: _____

Net Monthly Cost (Taxes, Insurance, etc.): _____

Owner Name: _____

Explain contingencies or options*: Included in above lease

### SITE C

**FACILITIES USE (Check one or more)**

- [ ] All Dealership Operations
- [ ] New Vehicle Sales
- [ ] Vehicle Storage
- [ ] Used Vehicle Sales
- [ ] Office & Administration
- [ ] Parts Storage
- [ ] Service

Other _____

**OWNERSHIP (Check one)**

Facilities are owned by:

- [ ] Dealer
- [ ] Affiliate of Dealer
- [ ] Owner of Dealer
- [ ] Third Party

**LEASE INFORMATION (Complete, if leased)**

Lease Expiration Date: _____

Net Monthly Cost (Taxes, Insurance, etc.): _____

Owner Name: _____

Explain contingencies or options*: _____

### SITE D

**FACILITIES USE (Check one or more)**

- [ ] All Dealership Operations
- [ ] New Vehicle Sales
- [ ] Vehicle Storage
- [ ] Used Vehicle Sales
- [ ] Office & Administration
- [ ] Parts Storage
- [ ] Service

Other _____

**OWNERSHIP (Check one)**

Facilities are owned by:

- [ ] Dealer
- [ ] Affiliate of Dealer
- [ ] Owner of Dealer
- [ ] Third Party

**LEASE INFORMATION (Complete, if leased)**

Lease Expiration Date: _____

Net Monthly Cost (Taxes, Insurance, etc.): _____

Owner Name: _____

Explain contingencies or options*: _____



**NISSAN MOTOR ACCEPTANCE CORPORATION**

Commercial Credit Department
8900 Freeport Parkway
Irving, Texas 75063-2438

November 25, 2014

NISSAN NORTH AMERICA, INC.
One Nissan Way
Franklin, TN 37067

Dear Sir/Madam:

The undersigned Financing Institution hereby authorizes NISSAN NORTH AMERICA, INC. formerly known as Nissan Motor Corporation in U.S.A. ("Nissan") to draw cash drafts on us in payment for Nissan motor vehicles sold, delivered, or shipped to the undersigned authorized Nissan Dealer (the "Dealer").

We authorize you to sell, deliver, or ship Nissan Motor vehicles to this dealer without our prior approval and we agree to pay Nissan therefore by paying at par upon presentation, provided that such drafts will be presented to Nissan Motor Acceptance Corporation ("NMAC") no later than three (3) days after shipment to the Dealer, Nissan's cash drafts drawn on us covering the said vehicle. Each draft will show information specifying among other things that the vehicle(s) appearing thereon is sold to the dealer, together with the invoice number, serial number, and amount for each vehicle. The foregoing applies to all forms of sale, delivery, release or shipment. We understand and agree that this authorization and commitment to Nissan is unconditional and that it is in no way related to or limited by any payment obligation that the Dealer may have or incur pursuant to any agreement(s) with us. We request that Manufacturer's Statement of Origin and invoice be sent to: Woodfield Nissan, Inc. , 700 W. Higgins Road, Hoffman Estates, IL 60195. These instructions remain in effect unless and until Nissan Motor Acceptance Corporation notifies Nissan of a change in delivery instructions. Such change can be made at any time, in writing, to Nissan and does not require written approval or acknowledgment by the Dealer. We may notify Nissan to suspend or terminate this authorization at any time. However, such suspension or termination shall not become effective until the close of your first business day following receipt of such notice by Nissan. We agree to honor and pay all drafts covering vehicles sold, delivered, or shipped to the Dealer prior to such time. If such notice is given by telephone or telegram, we will confirm in writing. We understand that Nissan incurs no obligation hereunder to sell, deliver or ship vehicles to the Dealer and that Nissan reserves the right to suspend or discontinue shipments or deliveries to the Dealer at any time at Nissan's sole discretion and without notice.

All written notices permitted or required to be sent to Nissan hereunder shall be addressed to NISSAN NORTH AMERICA, INC. and shall be sent certified mail with the return receipt requested to One Nissan Way, Franklin, TN 37067, Attention: Dealer Agreements with a copy to MWR - 600 Enterprise Street, Aurora, IL 60504-8139, Attention: Market Representation Manager.

Dealer NMAC# **2379**, NNA# **3229**

NISSAN NORTH AMERICA, INC.
November 25, 2014

This authorization is effective immediately and supersedes any previous authorization whereby we have agreed to pay for motor vehicles sold, delivered, or shipped to the Dealer.

Dealer's flooring limit is **$11,500,000.00**. Daily maximum limit, if any is: <u>NONE</u>.  This cash draft letter is only valid subsequent to the issuance of valid NMAC and NNA dealer numbers and NNA's approval of the Dealer.  Special Restrictions: if any: <u>NONE</u>.

**FINANCING INSTITUTION:**
Nissan Motor Acceptance Corporation
8900 Freeport Parkway,
Irving, TX 75063

**FOR NNA USE ONLY:**
Bank of America
1450 W. Redondo Beach Blvd.
Gardena, CA 90746
Bank No. 16   Bank Code: 00661
Fed. Reserve: 1220
Account No.: 14944-90001

By: _____
     Venise Edison, Manager, Commercial Credit

Date: _____12 , 8_____, 2014

## NISSAN NORTH AMERICA, INC. DEALER ACKNOWLEDGMENT

The undersigned dealer acknowledges the above authorization and requests that Nissan North America, Inc. draft on the above-named financial institution for vehicles sold, shipped, or delivered to it.  The undersigned Dealer understands that said financial institution's authorization does not affect its primary obligation to pay for said vehicles.

**Dealer:**
Woodfield Nissan, Inc.

700 W. Higgins Road
Hoffman Estates, IL 60195
**Telephone No.** (847) 310-1900

**NMAC Dealer No.** 2379
**NNA Region No.**   24
**NNA Dealer No.**   3229

By: _____
     William A. Slevin, President

Date: ____12-1-14____, 2014

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 83 |
| Certified Fee | | 2.30 |
| Return Receipt Fee (Endorsement Required) | | 1.75 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 4.88 |

Postmark
Here

MR

Sent To
Woodfield Nissan, Inc.
WilliamSlevin
Street, Apt. No.; or PO Box No.
700 W. Higgins Rd.
City, State, ZIP+4
Hoffman Estates, IL 60195

7001 2510 0005 7973 2061

PS Form 3800, January 2001     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Woodfield Nissan, Inc.
Attn:Mr. William Slevin
700 W. Higgins Rd.
Hoffman Estates, IL 60195

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☑ Agent
☐ Addressee

B. Received by ( Printed Name)          C. Date of Delivery
                                          3-11-04

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☒ Certified Mail        ☐ Express Mail
☐ Registered            ☒ Return Receipt for Merchandise
☐ Insured Mail          ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service labe)
7001 2510 0005 7973 2061

PS Form 3811, August 2001     Domestic Return Receipt     102595-01-M-0381

**Certified Mail Provides:**
- A mailing receipt
- A unique identifier for your mailpiece
- A signature upon delivery
- A record of delivery kept by the Postal Service for two years

***Important Reminders:***
- Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
- Certified Mail is *not* available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a *Return Receipt* may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement *"Restricted Delivery".*
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT: Save this receipt and present it when making an inquiry.**

PS Form 3800, January 2001 *(Reverse)*          102595-01-M-1049

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• **Sender: Please print your name, address, and ZIP+4 in this box** •

Nissan North America, Inc.
600 Enterprise St
Aurora, IL  60504





## PRODUCT ADDENDUM
## TO
## NISSAN SALES AND SERVICE AGREEMENT

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale the Nissan Products identified below:

1) Nissan Cars and Trucks

| VERSA | MAXIMA | XTERRA | TITAN |
| SENTRA | 350Z | PATHFINDER | ARMADA |
| ALTIMA | FRONTIER | MURANO | QUEST |
| ROGUE | | | |

2) Genuine Nissan Parts for Nissan Cars and Trucks,
3) Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and.
4) All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller. This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental Altima Hybrid Product Addendum issued to a limited number of Nissan Dealers exclusively in the states of California, Connecticut, Maine, Massachusetts, New Jersey, New York, Rhode Island, and Vermont, which shall remain in full force and effect).

This Product Addendum is effective as of September 1, 2007 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

Doing Business As:


City:
**HOFFMAN ESTATES**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By: William O. Bosley
Vice President
General Manager, Nissan Division

By: Eric Anderson
Regional Vice President
North Central Region

(File this Addendum with Current Sales & Service Agreement)



**NISSAN NORTH AMERICA, INC.**

North Central Region
600 Enterprise St.
Aurora, IL 60504

Mailing Address: P.O. Box 2060
Aurora, IL 60507-2060

Telephone: 630.851.8000

June 29, 2007

WOODFIELD NISSAN, INC.
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60195

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of the addition of the all new Nissan Rogue to our product line-up, scheduled for wholesale release on September 18, 2007.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental Altima Hybrid Product Addendum - if you are one of the limited number of Nissan Dealers operating in the states of California, Connecticut, Maine, Massachusetts, New Jersey, New York, Rhode Island, and Vermont to whom it was issued) all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact Chad Kirchhoff, Regional Market Representation Manager.

Sincerely,

Eric Anderson
Regional Vice President
North Central Region

CORP 265 HUR

## Dillon, Joyce

**From:** TrackingUpdates@fedex.com
**Sent:** Tuesday, July 10, 2007 1:25 PM
**To:** Dillon, Joyce
**Subject:** FedEx Shipment 791338687953 Delivered

---

This tracking update has been requested by:

Company Name: Nissan North America, Inc.

Name: JOHN MELISI

E-mail: joyce.dillon@nissan-usa.com

---

Our records indicate that the following shipment has been delivered:

| | |
|---|---|
| Tracking number: | 791338687953 |
| Reference: | MARKET REP DEPT |
| Ship (P/U) date: | Jul 9, 2007 |
| Delivery date: | Jul 10, 2007 1:20 PM |
| Sign for by: | J.COLEMAN |
| Delivered to: | Shipping/Receiving |
| Service type: | FedEx 2Day |
| Packaging type: | FedEx Envelope |
| Number of pieces: | 1 |
| Weight: | 0.50 lb. |

| Shipper Information | Recipient Information |
|---|---|
| JOHN MELISI | ATTN: DEALER PRINCIPAL |
| Nissan North America, Inc. | WOODFIELD NISSAN, INC. |
| 600 Enterprise Street | 700 W. HIGGINS ROAD |
| Aurora | HOFFMAN ESTATES |
| IL | IL |
| US | US |
| 60504 | 60195 |

Special handling/Services:
Deliver Weekday

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 1:25 PM  CDT
on 07/10/2007.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number  above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of  the
request, the requestor's message, or the accuracy of this tracking update.  For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.

**AMENDMENT NO. 3**
**TO**
**NISSAN DEALER**
**SALES AND SERVICE AGREEMENT**

This Agreement of Amendment is entered into and effective September 30, 2004 by and between the Nissan Division of NISSAN NORTH AMERICA, INC., a California corporation (hereinafter "Seller"), and WOODFIELD NISSAN INC., an Illinois corporation (hereinafter "Dealer"). The terms of this Amendment will be effective for as long as Dealer or its principals are authorized Nissan dealers, and shall be binding on any successors.  As a condition of Seller's consent to any change in ownership, Dealer agrees to require any proposed buyer of Dealer's dealership assets to assume the rights, obligations and provisions in accordance with Seller's Guides and Policies in effect at that time, specifically including those set forth below.

**RECITALS**

Effective October 19, 1993, Seller and Dealer entered into a Nissan Dealer Sales and Service Agreement (hereinafter "the Agreement") which was amended on April 29, 1996 and May 15, 2001.  Seller and Dealer desire to amend the Agreement to reflect an Executive Manager change and additions to Article Tenth.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.     The identification of Owner(s) and Executive Manager in the Final Article is hereby amended to read as follows:

The Principal Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| William A. Slevin | 24 Pentwater Dr South Barrington, IL 60010 | 100% |

The Other Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
|      |           |                     |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| Erwin C. Goldberg | 344 St. Andrews Lane Gurnee, IL 60031 | 0% |

2.     ARTICLE Tenth: Special Conditions is hereby amended to include the following:

**A.  <u>TRADE DRESS ELEMENTS</u>**

In addition to Section 6.K. of the Standard Provisions to this Agreement and the Dealership Identification Addendum, Dealer hereby acknowledges that upon termination of this Agreement or if Dealer moves, relocates, or changes the usage of the Dealership

Location or any of the Dealership Facilities, the use of any Nissan trademark, trade name, or other make or name owned, licensed, or associate with Nissan (collectively "Nissan Mark") or signature building elements ("Trade Dress Elements") at the facilities specified in the current Dealership Facilities Addendum is unauthorized. Any such unauthorized use by Dealer of Nissan Marks or Trade Dress Elements will be considered to have irreparably harmed Seller pursuant to any applicable federal and state trademark infringement and unfair competition laws.   Upon termination of this Agreement or if Dealer moves, relocates, or changes the usage of the Dealership Location or any of the Dealership Facilities, Dealer is required to remove all signage bearing any Nissan Mark or Trade Dress Element or otherwise to cover, remove, obliterate, or return at Nissan's discretion any such Nissan Mark or Element.  Section 9.C. of the Identification Addendum gives Nissan the right to enter the dealership premises and remove its main brand signs, its sign structures and equipment ("Signs"). Furthermore, if Dealer fails to remove any other signs bearing the Nissan Mark, Nissan has the right upon ten (10) days' written notice to do so.  Dealer also agrees to cover, remove, obliterate, or return at Nissan's discretion any Trade Dress Elements from the Nissan signature building that may lead the public to believe that it is a Nissan dealership. Such Trade Dress Elements include, but are not limited to:

Exterior:

- All Nissan Signs
- Paint Color
- Entry Element
- Louvers

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

IN WITNESS WHEREOF, the parties have executed this Agreement in triplicate as of the day and year first above written.

DEALER

WOODFIELD NISSAN, INC.

By _____
William A. Slevin
Principal Owner

SELLER

NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By _____
Mark C. McNabb
Vice President
General Manager, Nissan Division

By _____
Thomas P. Hushek
Regional Vice President
North Central Region

# AMENDMENT NO. 2
# TO
# NISSAN DEALER
# SALES AND SERVICE AGREEMENT

This Agreement of Amendment is entered into and effective May 15, 2001 by and between the Nissan Division of NISSAN NORTH AMERICA, INC., a California corporation (hereinafter "Seller"), and WOODFIELD NISSAN, INC., an Illinois corporation (hereinafter "Dealer").

## RECITALS

Effective October 19, 1993, Seller and Dealer entered into a Nissan Dealer Sales and Service Agreement (hereinafter "the Agreement") which was amended April 29, 1996. Seller and Dealer desire to amend the Agreement to reflect changes to Article Tenth.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1. ARTICLE TENTH: Article Tenth is hereby amended to read as follows:

A. Exhibit A is deleted in its entirety.

B. <u>Existing Dealership Facilities</u>

Currently Nissan is aware of and has only authorized, for the period up to **May 1, 2002** the conduct of Kia parts and service operations from the Nissan Dealership Facilities in the manner and layout approved by Nissan. This authorization does not constitute consent to and expressly denies consent to conduct Kia operations from the Dealership Facilities beyond May 1, 2002, or to modified or expanded sales, parts, and service operations, or to the substitution or addition of parts and service operations for another line-make or use to the Dealership Facilities at any time.

The following Facility Usage provision is made part of this Agreement and is effective until May 1, 2002, or until the Nissan Dealership Facilities are restored to full exclusivity in accordance with Nissan's Guides and Policies, whichever occurs first:

## **FACILITY USAGE**

In order for Dealer to maintain competitive Dealership Facilities to effectively market Nissan Products, Dealer hereby agrees to abide by and to never challenge the following provisions (hereinafter "Facility Usage Provisions"), which incorporate Nissan's Facilities Usage Policy as may be established by Seller from time to time. These Facility Usage Provisions shall be effective concurrent with the execution of a Nissan Dealer Sales and Service Agreement and shall continue in effect thereafter so long as Dealer (or its principals) are authorized Nissan dealers and shall be binding on any successors-in-interest, assignees or purchasers of Dealer:

 a) The only line-make of new, unused motor vehicles which Dealer shall display and sell at the Dealership Facilities shall be the Nissan line and make of motor vehicles. Dealer agrees not to conduct any dealership sales operations for any other make or line of new, unused vehicles from the Dealership Facilities.

 b) (1) Nothing contained herein shall relieve Dealer of its obligation to provide fully exclusive sales and customer contact areas at the Dealership Facilities dedicated to the promotion of Nissan Products.

 (2) Dealer shall sell and maintain a full line of Genuine Nissan Parts and Accessories, including service contracts, at the Dealership Facilities and shall provide a full range of automotive servicing for Nissan vehicles at the Dealership Facilities pursuant to Section 5 of the Standard Provisions to the Agreement. Nothing contained herein, however, shall preclude Dealer from offering parts, accessories or servicing for vehicles of other lines or makes subject to Nissan's prior, written consent. Such consent is dependent upon Dealer's full compliance with Nissan's current guides for Parts and Service Operations, and subject to Nissan's approval of the appearance, layout, signage, and usage of the combined parts & service

Amendment Number : 2
Dealer : WOODFIELD NISSAN, INC.

operations. Further, such operations shall not substitute for the sale of Nissan products. Currently Nissan is aware of and has only authorized the conduct of Kia parts and service operations from the Dealership Facilities.

This authorization does not constitute consent to and expressly denies consent to expanded parts and service operations or to the substitution or addition of parts and service operations for another line-make or use to the Dealership Facilities.

c) Dealer shall not advertise or promote any make or line of new, unused vehicles from Dealership Facilities other than the Nissan line.

d) Dealer shall not install or maintain any sign at the Dealership Facilities which would tend to lead the public into believing that any line or make of vehicles other than the Nissan line is sold at the Dealership Facilities.

e) Dealer agrees that under Article Third of the Agreement and Section 15 of the Standard Provisions, Nissan may reasonably require any proposed buyer of Dealer's assets to agree to Facility Usage Provisions in accordance with Nissan's Guides and Policies in effect at that time, as a condition of Nissan's consent to the change of ownership.

f) Any failure by Dealer to abide by the foregoing subparts (a) through (e) shall constitute a material breach of the Agreement warranting its termination, and shall constitute "good cause" for its termination under Chapter 815, Section 710/2(v), et seq. of the Illinois Compiled Statutes, or any applicable successor statute.

C.    New Exclusive Dealership Facilities

In order for Dealer to provide competitive Dealership Facilities to effectively market the Nissan Products and Brand, Dealer hereby agrees to provide exclusive, separate and distinct (stand-alone) Nissan Sales, Parts and Service Dealership Facilities of a size, appearance and layout meeting Seller's approval and in compliance with the Facility Guides established by Seller, in accordance with the following schedule:

(1)    On or before December 1, 2001, Dealer shall submit written plans on how Dealer intends to restore the Nissan Dealership Facilities to full exclusivity in accordance with Nissan's Guides and Policies on or before the deadline set forth in (2) below, and

(2)    On or before May 1, 2002, Dealer shall provide fully operational, exclusive, separate and distinct (stand-alone) Nissan Dealership Facilities in accordance with Nissan's Guides and Policies at 700 W. Higgins Road, Hoffman Estates, IL. No Kia signage shall be placed anywhere inside or outside the Nissan Dealership Facilities.

Failure by Dealer to meet any of the deadlines set forth above shall constitute a material breach of this Agreement and warranting termination and shall constitute good cause under Chapter 815, Section 710/2(v), et seq. of the Illinois Compiled Statutes, or any applicable successor statute.

Upon providing operational, exclusive Nissan Dealership Facilities, Dealer agrees to the following Exclusivity provisions which will be added to Article Tenth of the Agreement:

EXCLUSIVITY

In order for Dealer to maintain competitive Dealership Facilities to effectively market Nissan Products, Dealer hereby agrees to abide by and never challenge the following provisions (hereinafter "Exclusivity Provisions"), which

Page 2 of 4

Amendment Number : 2
Dealer : WOODFIELD NISSAN, INC.

incorporate Nissan's Facilities Usage Policy as may be established by Seller from time to time. These Exclusivity Provisions shall be effective concurrent with the execution of the Agreement, and continue in effect for so long as Dealer (or its principals) are Authorized Nissan dealers and these provisions shall be binding on any successors-in-interest, assigns or purchasers of Dealer:

a) The only line-make of new, unused motor vehicles which Dealer shall display and sell at the Dealership Facilities shall be the Nissan line and make of motor vehicles. Dealer shall not conduct any dealership sales operations for any other make or line of new, unused vehicles from the Dealership Facilities;

b) Dealer shall sell and maintain a full line of Genuine Nissan Parts and Accessories, including service contracts, at the Dealership Facilities and shall provide a full range of automotive servicing for Nissan vehicles at the Dealership Facilities pursuant to Section 5 of the Standard Provisions to the Agreement. Nothing contained herein, however, shall preclude Dealer from offering parts, accessories or servicing for vehicles of other lines or makes so long as such products or services are incidental to Dealer's Nissan Dealership Operations and do not substitute for the sale of Nissan Products;

c) Dealer shall not advertise or promote any make or line of new, unused vehicles from the Dealership Facilities other than the Nissan line;

d) Dealer shall not install or maintain any sign at or near the Dealership Facilities which would tend to lead the public into believing that any line or make of vehicles other than the Nissan line is sold at the Dealership Facilities.

e) Dealer agrees that under Article Third of the Agreement and Section 15 of the Standard Provisions, Nissan may reasonably require any proposed buyer of Dealer's assets to agree to identical Exclusivity Provisions, in accordance with Nissan's Guides and Policies in effect at that time, as a condition of Nissan's consent to the change of ownership;

f) Any failure by Dealer to abide by the foregoing subparts (a) through (e) shall constitute a material breach of the Agreement warranting its termination and shall constitute "good cause" for termination under Chapter 815, Section 710/2(v), et seq. of the Illinois Compiled Statutes, or any applicable successor statute.

The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

Amendment Number : 2
Dealer : WOODFIELD NISSAN, INC.

        IN WITNESS WHEREOF, the parties have executed this Agreement in triplicate as of the day and year first above written.

DEALER

WOODFIELD NISSAN, INC.

By _____
William A. Slevin
Principal Owner

SELLER

NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By _____
W. J. Kirrane
Vice President
General Manager, Nissan Division

By _____
Thomas P. Hushek
Regional Vice President
North Central Region

**AMENDMENT NO. 1**

**TO**

**NISSAN DEALER**

**SALES AND SERVICE AGREEMENT**


This Agreement of Amendment is entered into and effective April 29, 1996 by and between the Nissan Division of NISSAN MOTOR CORPORATION U.S.A., a California corporation (hereinafter "Seller"), and WOODFIELD NISSAN, INC., an Illinois corporation (hereinafter "Dealer").

### RECITALS

Effective October 10, 1993, Seller and Dealer entered into a Nissan Dealer Sales and Service Agreement (hereinafter "the Agreement"). Seller and Dealer desire to amend the Agreement to reflect a Minority Ownership Change.

THEREFORE, the parties hereby agree to amend the Agreement as follows:

1.      The identification of Owner(s) and Executive Manager in the Final Article is hereby amended to read as follows:

"The Principal Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| William A. Slevin | 5 N. 210 Heritage Court Wayne, IL 60184 | 100% |

The Other Owner(s) of Dealer are as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| NONE | NONE | NONE |

The Executive Manager of Dealer is as follows:

| NAME | RESIDENCE | PERCENTAGE INTEREST |
|------|-----------|---------------------|
| William A. Slevin | 5 N. 210 Heritage Court Wayne, IL 60184 | 100% |


The terms and conditions of the Agreement, to the extent not modified herein, shall remain in full force and effect and shall continue to bind the parties hereto.

Page 1 of 2

# NISSAN

**NISSAN NORTH AMERICA, INC.**
Corporate Office
P.O. Box 685001
Franklin, TN 37068-5001
Telephone: 615-725-1000

April 27, 2012

**VIA FEDEX**

Mr. William A. Slevin
Woodfield Nissan, Inc. 3229
700 W Higgins Rd
Hoffman Estates, IL 60195

Re:    Changes to Primary Market Area

Dear Mr. Slevin,

This letter is to inform you that Nissan North America, Inc. (Nissan) has revised your Primary Market Area (PMA) as provided in section 1.N of the standard provisions of your Dealer Sales and Service Agreement.

Every 10 years the US government releases new Census figures as called for by the constitution. The recently released 2010 census data reflect population shifts and other demographic trends that have occurred throughout the nation over the previous 10 years of time.

As a result, Nissan has completed a comprehensive review of all Nissan Dealer PMAs on a national basis. In addition to incorporating the revised census data, Nissan also reviewed your PMA based on additional criteria such as: air distance, drive distance, natural boundaries, buyer shopping patterns, and other objective factors. As a result of this review, the attached documents provide information detailing the PMA revisions and your new PMA geography. As you know, your PMA is an evaluation tool and does not affect where you sell vehicles.

Attached you will find the following;

        1.) Notice of PMA that includes all census tract detail in your new PMA geography

        2.) PMA Map outlining your new PMA, the census tracts and related geography with major road systems

If you have any questions, please contact your Dealer Operations Manager.

Regards,

Patrick W. Doody
Director, Market Representation
Nissan North America, Inc.



## NOTICE OF PRIMARY MARKET AREA

Pursuant to Section 1.N of the Standard Provisions of the Nissan Dealer Sales & Service Agreement (the "Agreement"), the area described by 2010 census tracts in Exhibit A to this Notice, shall be deemed to be the Primary Market Area of the Dealer identified below.   Exhibit A is incorporated by reference into this Notice.

This Primary Market Area will be used by Nissan North America, Inc. ("Seller"), to the extent applicable, in the establishment and evaluation of vehicle sales responsibilities of Dealer under Section 3 of the Agreement.

To the extent deemed relevant thereto, such Primary Market Area may also be employed in the establishment or amendment of Guides for the Dealership Facilities and other matters relating to Dealer's dealership operations.

The Primary Market Area described in Exhibit A hereto will be employed by Seller for the foregoing purposes until superseded by a new Notice of Primary Market Area issued to Dealer by Seller.  This Notice of Primary Market Area cancels and supersedes any previous Notice of Primary Market Area furnished to Dealer by Seller.

This Notice of Primary Market Area is effective as of May 16, 2012, or such later date, as may be required by any applicable statute.

**DEALER:**
**Woodfield Nissan, Inc.**

Doing Business As:

City:
**Hoffman Estates**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By: Albert Castignetti
    Vice President
    General Manager, Nissan Division

By: Bryan Dumais
    Regional Vice President
    Midwest Region

(File this Addendum with Current Sales & Service Agreement)



Nissan North America

Chicago



## PMA HIGHLIGHT MAP

23 Woodfield Nis  Schaumburg

Dealer Code: 3229

© 2012 Urban Science. All rights reserved. MS-4.8.6 CM-5.2.1.0 RF-4.0.15.0    |    Map data © 2006-2011 TomTom. All rights reserved.    |    Date Printed: Apr 27, 2012    |    Serial# 1408931

Product File: N:\Nissan\MarketSmarts 2010 CT\Exhibit_DEALER_PACKAGES\A_PMA_Map.prn
Product ID:  PMA_HIGHLIGHT_MAP

Geog Ref:  P00-CHI_2010CT

URBAN SCIENCE



## Nissan North America

## Chicago



### PMA Map

23 Woodfield Nis Schaumburg

# Exhibit A
# To
# Notice of Primary Market Area

Dealer Name and Code: Woodfield Nissan, Inc.                                    3229

Geog. Ref.: CHI_2010CT

This Exhibit A is incorporated by reference in and is a part of the Notice of Primary Market Area
issued to the above named Dealer effective 5/16/2012

| County: 17031 - COOK | | | | | | ILLINOIS |
|---|---|---|---|---|---|---|
| 7702.01 | 7702.02 | 7703.00 | 7704.00 | 7705.00 | 8036.03 | 8040.00 |
| 8041.02 | 8041.04 | 8041.05 | 8041.06 | 8041.08 | 8041.09 | 8042.01 |
| 8042.02 | 8043.05 | 8043.08 | 8043.09 | 8045.09 | 8045.10 | 8045.11 |
| 8046.03 | 8046.06 | 8046.07 | 8046.08 | 8046.09 | 8046.10 | 8046.11 |
| 8047.01 | 8047.05 | 8047.06 | 8047.09 | 8047.10 | 8047.11 | 8047.12 |
| 8047.13 | 8047.14 | 8047.15 | 8047.16 | 8048.03 | 8048.04 | 8048.05 |
| 8048.06 | 8048.07 | 8048.08 | 8048.09 | 8048.10 | 8050.02 | 8051.05 |
| 8051.06 | 8051.07 | 8051.08 | 8051.09 | 8051.11 | 8051.12 | |

| County: 17043 - DU PAGE | | | | | ILLINOIS |
|---|---|---|---|---|---|
| 8410.03 | 8411.02 | 8411.04 | 8413.15 | 8413.20 | |

## Total Tracts for this PMA: 60

This Exhibit shows the 2010 Census Tracts that compose the Dealer's Primary Market Area. Each full
or partial County and the individual 2010 Census Tracts within those full or partial Counties that are
included in the Dealer's assigned market are included for reference. Data on the Dealer's market is
collected by Nissan based on this geography including the related levels of geography as required for
full data collection.

The PMA (Primary Market Area) Map is attached for reference and shows by the area in the yellow
tone the Dealer's assigned market as described by 2010 Census Tracts.

## Ezell, Scott

**From:**      trackingupdates@fedex.com
**Sent:**      Wednesday, May 02, 2012 11:28 AM
**To:**        Ezell, Scott
**Subject:**   FedEx Shipment 514802820936 Delivered

This tracking update has been requested by:

Company Name:                Nissan North America
Name:                        D. PATIN MARKET REP A6C
E-mail:                      'not provided by requestor'
Message:                     PMA NOTICE

Our records indicate that the following shipment has been delivered:

Reference:                   D.PATIN/MARKET REP/11206
Ship (P/U) date:             Apr 30, 2012
Delivery date:               May 2, 2012 11:22 AM
Sign for by:                 R.ANFARO
Delivery location:           Hoffman Estates, IL
Delivered to:                Shipping/Receiving
Service type:                FedEx 2Day
Packaging type:              FedEx Envelope
Number of pieces:            1
Weight:                      0.50 lb.
Special handling/Services:   Deliver Weekday
Tracking number:             514802820936

Shipper Information                   Recipient Information
D. PATIN MARKET REP A6C               24-3229 William A. Slevin
Nissan North America                  Woodfield Nissan Inc.
1 Nissan Way                          700 W Higgins Rd
Franklin                              _
TN                                    Hoffman Estates
US                                    IL
37067                                 US
                                      60195

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 11:27 AM CDT on
05/02/2012.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.



**NISSAN NORTH AMERICA, INC.**

Midwest Region
600 Enterprise Street
Aurora, IL 60504-8139
Telephone: 630.851.8000

June 25, 2013

WOODFIELD NISSAN, INC.
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60169

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of the addition of the all new Nissan Versa Note to our product line-up.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, and the supplemental NCV Product Addendum - if you are certified to sell and service the Nissan GT-R, Nissan LEAF, or Nissan Commercial Vehicles); all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact M. Scott Compton, Midwest Region Market Representation Manager.

Sincerely,

Bryan Dumais
Regional Vice President
Midwest Region



**PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale the Nissan Products identified below:

1)    Nissan Cars and Trucks

| | | | |
|---|---|---|---|
| VERSA NOTE | ALTIMA | FRONTIER | MURANO CROSSCAB |
| VERSA SEDAN | ALTIMA COUPE | XTERRA | ROGUE |
| SENTRA | MAXIMA | PATHFINDER | TITAN |
| CUBE | 370Z COUPE | JUKE | ARMADA |
| | 370Z ROADSTER | MURANO | QUEST |

2)    Genuine Nissan Parts for Nissan Cars and Trucks,
3)    Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and,
4)    All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller. This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental LEAF Product Addendum issued to all certified LEAF Nissan Dealers, the supplemental GT-R Product Addendum issued to a limited number of certified GT-R Nissan Dealers, and the supplemental NCV Product Addendum issued to a limited number of certified Nissan Commercial Vehicle Dealers all of which shall remain in full force and effect).

This Product Addendum is effective as of June 1, 2013 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

Doing Business As:


City:
**HOFFMAN ESTATES**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

*Fred M. Diaz*

By: Fred M. Diaz
    Divisional VP, Sales & Marketing,
    Parts & Service, Nissan

*Bryan Dumais*

By: Bryan Dumais
    Regional Vice President
    Midwest Region



**SUPPLEMENTAL PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale the Nissan Products identified below:

   (1) Nissan Cars

      LEAF

      Note:  This vehicle's distribution is only to Certified Nissan LEAF Dealers and it should not be dealer traded to non-certified dealers.

   (2) Genuine Nissan parts and accessories for the Nissan LEAF.

   (3) All other products marketed by Nissan through certified dealers for the Nissan LEAF.

This Supplemental Product Addendum shall be effective only with respect to the LEAF and shall remain in effect until it is revoked or replaced.  This Supplemental Product Addendum is in addition to any other currently effective Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement.

This Supplemental Product Addendum is effective as of October 1, 2011 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

Doing Business As:


City:
**HOFFMAN ESTATES**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.


By: Albert Castignetti
    Vice President,
    General Manager, Nissan Division


By: Robert D. Grafton
    Regional Vice President
    Midwest Region

(File this Addendum with Current Sales & Service Agreement)



**NISSAN NORTH AMERICA, INC.**

Midwest Region
600 Enterprise Street
Aurora, IL 60504-8139
Telephone: 630.851.8000

March 11, 2014

WOODFIELD NISSAN, INC. 3229
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60169

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of the addition of the Nissan NV200 to our product line-up.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, and the supplemental NCV Product Addendum - if you are certified to sell and service the Nissan GT-R, Nissan LEAF, or Nissan Commercial Vehicles); all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact M. Scott Compton, Midwest Region Market Representation Manager.

Sincerely,

Bryan Dumais
Regional Vice President
Midwest Region



**PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale the Nissan Products identified below:

1) Nissan Cars and Trucks

| | | | |
|---|---|---|---|
| VERSA NOTE | MAXIMA | PATHFINDER | ROGUE |
| VERSA SEDAN | 370Z COUPE | PATHFINDER HEV | ROGUE SELECT |
| SENTRA | 370Z ROADSTER | JUKE | TITAN |
| CUBE | FRONTIER | MURANO | ARMADA |
| ALTIMA | XTERRA | MURANO CROSSCAB | QUEST |
| | | | NV200 |

2) Genuine Nissan Parts for Nissan Cars and Trucks,
3) Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and,
4) All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller. This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental LEAF Product Addendum issued to all certified LEAF Nissan Dealers, the supplemental GT-R Product Addendum issued to a limited number of certified GT-R Nissan Dealers, and the supplemental NCV Product Addendum issued to a limited number of certified Nissan Commercial Vehicle Dealers all of which shall remain in full force and effect).

This Product Addendum is effective as of March 11, 2014 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

Doing Business As:


City:
**HOFFMAN ESTATES**

By: Fred M. Diaz
    Senior Vice President
    Sales & Marketing
    Parts & Service, U.S.A.

State:
**IL**

By: Bryan Dumais
    Regional Vice President
    Midwest Region

Dealer Code:
**3229**



**NISSAN NORTH AMERICA, INC.**
**Midwest Region**
600 Enterprise Street
Aurora, IL 60504-8139
Telephone: 630.851.8000

September 21, 2015

WOODFIELD NISSAN, INC. 3229
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60169

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of revisions to the Nissan product line-up.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum - if you are certified to sell and service the Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi); all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact M. Scott Compton, Midwest Region Market Representation Manager.

Sincerely,

Bryan Dumais
Regional Vice President
Midwest Region



**PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale solely in the United States the Nissan Products identified below:

1)   Nissan Cars and Trucks

| | | | |
|---|---|---|---|
| VERSA NOTE | MAXIMA | XTERRA | ROGUE SELECT |
| VERSA SEDAN | 370Z COUPE | PATHFINDER | TITAN |
| SENTRA | 370Z ROADSTER | JUKE | ARMADA |
| ALTIMA | FRONTIER | MURANO | QUEST |
| | | ROGUE | NV200 |

2)   Genuine Nissan Parts for Nissan Cars and Trucks,
3)   Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and,
4)   All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller.  This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum issued to a limited number of certified Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi Dealers all of which shall remain in full force and effect).

This Product Addendum is effective as of September 01, 2015 or such later date, as may be required by any applicable statute.

<u>**DEALER:**</u>
**WOODFIELD NISSAN, INC.**



Doing Business As:


City:
**HOFFMAN ESTATES**


State:
**IL**


Dealer Code:
**3229**

<u>**SELLER:**</u>
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.


By: Leon Dorssers
Vice President, Dealer Network
Development
Nissan North America


By: Bryan Dumais
Regional Vice President
Midwest Region

(File this Addendum with Current Sales & Service Agreement)



**NISSAN NORTH AMERICA, INC.**
**Midwest Region**
600 Enterprise Street
Aurora, IL 60504-8139
Telephone: 630.851.8000

August 11, 2016

WOODFIELD NISSAN, INC. 3229
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60169

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of revisions to the Nissan product line-up.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum - if you are certified to sell and service the Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi); all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact Gregory Ebbs, Midwest Region Market Representation Manager.

Sincerely,

Bryan Dumais
Regional Vice President
Midwest Region



**PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale solely in the United States the Nissan Products identified below:

1)    Nissan Cars and Trucks

| | | | |
|---|---|---|---|
| VERSA NOTE | MAXIMA | PATHFINDER | TITAN |
| VERSA SEDAN | 370Z COUPE | JUKE | ARMADA |
| SENTRA | 370Z ROADSTER | MURANO | QUEST |
| ALTIMA | FRONTIER | ROGUE | NV200 |

2)    Genuine Nissan Parts for Nissan Cars and Trucks,
3)    Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and,
4)    All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller.  This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum issued to a limited number of certified Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi Dealers all of which shall remain in full force and effect).

This Product Addendum is effective as of August 01, 2016 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

Doing Business As:

City:
**HOFFMAN ESTATES**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By: David Kershaw
     Vice President, Dealer Network
     Development
     Nissan North America

By: Bryan Dumais
     Regional Vice President
     Midwest Region

(File this Addendum with Current Sales & Service Agreement)



**NISSAN NORTH AMERICA, INC.**
**Midwest Region**
600 Enterprise Street
Aurora, IL 60504-8139
Telephone: 630.851.8000

May 10, 2018

WOODFIELD NISSAN, INC. 3229
700 W HIGGINS RD
HOFFMAN ESTATES, IL 60169

Attention: Principal Owner

Nationally, all Nissan dealers are receiving new Product Addenda as a result of revisions to the Nissan product line-up.

The issuance of a new superseding Product Addendum is not a change to the Sales & Service Agreement but rather an update to the Product Addenda as provided for within the Agreement. This update is being conducted pursuant to Section 1.X., of the Standard Provisions to your Sales & Service Agreement, which provides that Nissan may issue new, superseding Product Addenda to you from time to time.

Please keep this revised Product Addendum with your Sales & Service Agreement (as well as the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum - if you are certified to sell and service the Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi); all other previously issued Product Addenda are no longer valid.

If you require any further information, please contact Robert Goetz, Midwest Region Market Representation Manager.

Sincerely,

Craig Keeys
Regional Vice President
Midwest Region



**PRODUCT ADDENDUM**
**TO**
**NISSAN SALES AND SERVICE AGREEMENT**

Pursuant to Sections I.B, I.C and I.X of the Nissan Dealer Sales & Service Agreement (the "Agreement") in effect between the Authorized Nissan Dealer named below and Nissan North America, Inc. ("Seller"), Seller hereby grants Dealer the non-exclusive right to buy for resale solely in the United States the Nissan Products identified below:

1) Nissan Cars and Trucks

| | | | |
|---|---|---|---|
| VERSA NOTE | 370Z COUPE | MURANO | TITAN |
| VERSA SEDAN | 370Z ROADSTER | PATHFINDER | TITAN XD |
| SENTRA | KICKS | ARMADA | |
| ALTIMA | ROGUE | FRONTIER | |
| MAXIMA | ROUGE SPORT | NV200 | |

2) Genuine Nissan Parts for Nissan Cars and Trucks,
3) Genuine Nissan Accessories for such Vehicles (this includes all other products offered by Nissan for dealers and consumers), and,
4) All other products and services branded with Nissan and offered by Nissan North America or Nissan Extended Service North America (NESNA) for sale to consumers; promoted through an authorized Nissan dealer.

This Product Addendum shall remain in effect unless and until superseded by a new Product Addendum issued to Dealer by Seller. This Product Addendum cancels and supersedes any previous Product Addendum furnished to Dealer by Seller pursuant to the existing terms of the Agreement (except for the supplemental GT-R Product Addendum, the supplemental LEAF Product Addendum, the supplemental NCV Product Addendum, and the supplemental NY Taxi Product Addendum issued to a limited number of certified Nissan GT-R, Nissan LEAF, Nissan Commercial Vehicles, or Nissan Taxi Dealers all of which shall remain in full force and effect).

This Product Addendum is effective as of May 01, 2018 or such later date, as may be required by any applicable statute.

**DEALER:**
**WOODFIELD NISSAN, INC.**

Doing Business As:

City:
**HOFFMAN ESTATES**

State:
**IL**

Dealer Code:
**3229**

**SELLER:**
NISSAN DIVISION
NISSAN NORTH AMERICA, INC.

By: Judith K. Wheeler
Division Vice President
U.S. and Canada Dealer Network Strategy

By: Craig Keeys
Regional Vice President
Midwest Region



August 11, 2022

**VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Woodfield Nissan, Inc.
700 W Higgins Rd
Hoffman Estates, IL 60169

Re:    Change to Primary Market Area

Dear William A Slevin,

This letter is to inform you that Nissan North America, Inc. ("Nissan") intends to revise your Primary Market Area ("PMA") as provided in section 1.N of the standard provisions of your Dealer Sales and Service Agreement.

Every 10 years the US government releases new census figures as called for by the constitution. The recently released 2020 census data reflect population shifts and other demographic trends that have occurred throughout the nation over the previous 10 years of time.

As a result, Nissan has completed a comprehensive review of all Nissan Dealer PMAs on a national basis. In addition to incorporating the revised census data, Nissan also reviewed your PMA based on additional criteria such as: drive distance, drive time, natural boundaries, buyer shopping patterns, and other objective factors. As a result of this review, the attached documents provide information detailing the proposed PMA revisions and proposed new PMA geography. As you know, your PMA is an evaluation tool and does not affect where you sell vehicles.

Attached you will find the following:

1.) Notice of PMA that includes all census tract detail in the proposed new PMA geography. As noted, this change does not affect where your dealership may sell vehicles, and it is not the result of the realignment, relocation, addition, or reduction of new Nissan dealers in Illinois. It is strictly the result of Nissan's comprehensive review of PMA assignments nationally, which review was precipitated by the results of the 2020 census.

2.) PMA Map outlining the proposed new PMA, the census tracts and related geography with major road systems.

Nissan intends for this PMA change to take effect on September 15, 2022.   At that time, the enclosed Notice of PMA will supersede any previous Notices of PMA issued to Dealer.

If you have any questions, please contact your Dealer Operations Manager.


Regards,

Brian Maragno
Director, Dealer Network Development
Nissan North America, Inc.



## NOTICE OF PRIMARY MARKET AREA

_____

Pursuant to Section 1.N of the Standard Provisions of the Nissan Dealer Sales & Service Agreement (the "Agreement"), the area described by 2020 census tracts in Exhibit A to this Notice, shall be deemed to be the Primary Market Area of the Dealer identified below. Exhibit A is incorporated by reference into this Notice.

This Primary Market Area will be used by Nissan North America, Inc. ("Seller"), to the extent applicable, in the establishment and evaluation of vehicle sales responsibilities of Dealer under Section 3 of the Agreement.

To the extent deemed relevant thereto, such Primary Market Area may also be employed in the establishment or amendment of Guides for the Dealership Facilities and other matters relating to Dealer's dealership operations.

The Primary Market Area described in Exhibit A hereto will be employed by Seller for the foregoing purposes until superseded by a new Notice of Primary Market Area issued to Dealer by Seller. This Notice of Primary Market Area cancels and supersedes any previous Notice of Primary Market Area furnished to Dealer by Seller.

This Notice of Primary Market Area is effective as of September 15, 2022, or such later date, as may be required by any applicable statute.

**DEALER:**                                    **SELLER:**
**Woodfield Nissan, Inc.**                     NISSAN DIVISION
                                               NISSAN NORTH AMERICA, INC.

Doing Business As:

City:                                          By:   Jeffrey J. Pope
**Hoffman Estates**                                  Divisional Vice President
                                                     Dealer Network Development & Customer Quality

State:
**Illinois**

Dealer Code:                                   By: Tiago Castro
**3229**                                            Regional Vice President
                                                    Midwest Region
                                                    ☒ I understand that checking this box constitutes a
                                                    legal signature on behalf of the Regional Vice President

(File this Addendum with Current Sales & Service Agreement)

# NISSAN

Schaumburg

## PMA Highlight Map

**Dealers**

■ 3229     Woodfield Nis     Schaumburg



URBAN SCIENCE® | Ni2® ©2021 Urban Science, All Rights Reserved
Serial Number: 446833

© 1992 - 2019 TomTom. All Rights Reserved.
Geog RefH - 2020CTAudit_5101012_23

# NISSAN

Schaumburg

## Exhibit A To Notice of Primary Market Area

*23 - Schaumburg*
*Woodfield Nissan, Inc. - 3229*

STATE/COUNTY CODE: 17031
TRACT/ZIP CODE: 170318047.13

### County: 17031 - Cook   ILLINOIS

| | | | | | | |
|---|---|---|---|---|---|---|
| 170317702.01 | 170317702.02 | 170317703.00 | 170317704.00 | 170318041.02 | 170318041.04 | 170318041.05 |
| 170318041.06 | 170318041.08 | 170318041.09 | 170318042.02 | 170318042.03 | 170318042.04 | 170318043.05 |
| 170318043.08 | 170318043.09 | 170318045.10 | 170318045.11 | 170318046.03 | 170318046.06 | 170318046.07 |
| 170318046.08 | 170318046.09 | 170318046.10 | 170318046.11 | 170318047.01 | 170318047.05 | 170318047.06 |
| 170318047.09 | 170318047.10 | 170318047.11 | 170318047.12 | 170318047.13 | 170318047.14 | 170318047.15 |
| 170318047.16 | 170318048.03 | 170318048.04 | 170318048.05 | 170318048.06 | 170318048.07 | 170318048.08 |
| 170318048.09 | 170318048.10 | 170318050.02 | 170318051.05 | 170318051.06 | 170318051.07 | 170318051.08 |
| 170318051.11 | 170318051.12 | | | | | |

### County: 17043 - DuPage   ILLINOIS

| | | | | |
|---|---|---|---|---|
| 170438410.03 | 170438411.02 | 170438411.04 | 170438411.08 | 170438413.20 |

**Total Geography Definitions for this PMA: 56**